IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KC FILED
NOV 1 6 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| TOYODA MACHINERY USA CORPORATION, an Illinois corporation, <br><br> Plaintiff, <br><br> v. <br><br> AMERICHIP INTERNATIONAL HOLDINGS, LLC, a Michigan Limited Liability Company, <br><br> Defendant. | Case No.: <br><br> 07CV6523 <br> JUDGE KENNELLY <br> MAGISTRATE JUDGE ASHMAN |

## COMPLAINT

NOW COMES TOYODA MACHINERY USA CORPORATION, by and through its attorneys, EDWARD J. UNDERHILL, ERIN GAEKE and MASUDA, FUNAI, EIFERT & MITCHELL, LTD. and for its Complaint, states as follows:

### THE PARTIES

1. Plaintiff, TOYODA MACHINERY USA CORPORATION ("Toyoda") was and now is a corporation incorporated under the laws of the State of Illinois, having its principal place of business in Arlington Heights, Cook County, Illinois, and is therefore a citizen of Illinois.

2. Defendant, AMERICHIP INTERNATIONAL HOLDINGS, LLC ("Americhip" and/or "Defendant") was and now is a limited liability company doing business under the laws of the State of Michigan, having its principal place of business in Plymouth, Michigan, and is therefore a citizen of Michigan.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000 and is between citizens of different states. Venue is proper pursuant to 28 U.S.C. §1391(a)(2) and/or (3).

4.      Paragraph 8(h) of a certain Security Agreement by and between Plaintiff and Defendant, which is described further below and which, in part, is the subject of this suit, contains a forum selection clause designating this judicial district as the exclusive jurisdiction and venue of this action.

## COUNT I
## BREACH OF LEASE AGREEMENT
## FH630S HORIZONTAL MACHINING CENTER

5.      As and for paragraph 5 of Count I, Toyoda realleges and incorporates as if fully set forth herein the allegations of paragraphs 1 through 4, inclusive.

6.      Beginning November 1, 2006, Defendant leased from Plaintiff a Toyoda FH630S Horizontal Machining Center (the "Machine") and agreed to pay $12,525.00 a month for rent. Defendant further agreed to pay the freight and service charges in connection with the delivery and installation of the Machine. Defendant leased the Machine from Plaintiff through July of 2007, when Plaintiff repossessed said Machine. On or about July 24, 2007, Plaintiff issued Defendant an invoice for the rent payments then due and owing, along with the freight and service charges, for a total of $109,200.00. A copy of Toyoda's Invoice No. 52824 is attached hereto as Exhibit "A" and is made a part hereof. To date, Defendant has not paid any portion of

the amount owed on Invoice No. 52824, and has not paid any of the monthly lease payments of $12,525.00 that are due and owing.

7. Plaintiff has made repeated demand for payment on Defendant for the balance owed on said Invoice, but Defendant has failed and refused to pay Plaintiff the $109,200.00 still owed.

8. Plaintiff has fully performed its obligations with regard to its agreement to lease Defendant the Machine.

**WHEREFORE,** TOYODA MACHINERY USA CORPORATION prays for judgment as follows:

A. Judgment in its favor and against AMERICHIP INTERNATIONAL HOLDINGS, LLC in the principal amount of ONE HUNDRED NINE THOUSAND TWO HUNDRED and 00/100 ($109,200.00) DOLLARS, plus pre-judgment interest at the statutory rate on said amount as and from August 23, 2007 through the date of trial, plus plaintiff's costs; and

B. Such other and further relief as the Court deems just and proper.

<u>**COUNT II**</u>
<u>**CLAIM UNDER SECURITY AGREEMENT**</u>

9. As and for paragraph 9 of Count II, Toyoda realleges and incorporates as if fully set forth herein the allegations of paragraphs 1 through 8, inclusive.

10. On or about October 16, 2006, in order to secure the payment of any and all indebtedness due and owing by Defendant to Plaintiff, Defendant entered into a Security Agreement (the "Security Agreement") relating to One (1) Toyoda Horizontal Machining Center, Model FA630, together with all standard equipment and accessories thereto (the previously described "Machine"). A copy of the Security Agreement is attached hereto and incorporated herein as Exhibit "B." By the specific language of Paragraph 2 of the Security Agreement, all of Plaintiff's rights under the Security Agreement applied to the lease of the Machine.

11. On or about October 18, 2006, Toyoda filed its UCC Financing Statement for the Equipment with the Michigan Secretary of State, thereof perfecting is security interest in the Equipment.

12. Defendant has defaulted upon the lease agreement entered into with Plaintiff, as more fully described in Count I, by failing to pay the lease amounts owed when due.

13. Paragraph 5 of the Security Agreement provides that Defendant shall be in default if it fails to pay any indebtedness when due or payable. As a result thereof, Defendant is in default under the Security Agreement.

14. Paragraph 6 of the Security Agreement provides that upon default by Defendant, Plaintiff may declare due, sue for and recover all payments and amounts then accrued or thereafter accruing under the Security Agreement.

4

15. Paragraph 8(f) of the Security Agreement allows Plaintiff to recover from Defendant all costs and expenses of repossession and collection, including its reasonable attorneys' fees, and court costs.

16. Paragraph 8(j) of the Security Agreement provides that upon default by Defendant, any amount due and owing to Plaintiff shall bear interest at no less than 18% per annum.

17. As a result of the default by Defendant of the lease agreement described in Count I of the Complaint, there is now due and owing from Defendant to Plaintiff under the Security Agreement the sum of $109,200.00, plus plaintiff's attorneys' fees and costs, as well as pre-judgment interest calculated at eighteen (18%) percent per annum as and from August 23, 2007, in an amount to be determined by the evidence at trial.

**WHEREFORE,** TOYODA MACHINERY USA CORPORATION prays for judgment as follows:

A. A judgment against Defendant, AMERICHIP INTERNATIONAL HOLDINGS, LLC in the principal amount of ONE HUNDRED NINE THOUSAND TWO HUNDRED and

00/100 ($109,200.00) DOLLARS, plus plaintiff's attorneys' fees, costs, expenses of recovery and collection, and interest through the date of trial, all to be proved at trial; and

  B. Such other and further relief as the Court may deem just and proper.

DATED: November _16_, 2007

        Respectfully Submitted,

        **TOYODA MACHINERY USA CORPORATION**

        By: _____
           One of its Attorneys

Edward J. Underhill, Esq.
Erin Gacke, Esq.
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
(312) 245-7500

EJU:cmp
N:\SYS08\26150\LIT\0365 Complaint.doc

# EXHIBIT "A"



Toyoda Machinery USA
316 West University Drive
Arlington Heights, IL 60004
Tel: (847) 253-0340 Fax: (847) 577-4680
www.toyodausa.com

| Invoice | | Nbr: 52824 | |
|---|---|---|---|
| Customer P.O. Number | Sales Order No. | Invoice Date | Page No. |
| 100406DZT | | 07-24-07 | 1 |

```
S  Cust No: 5740                         S  Ship To No:  5740
O  AmeriChip International              H  AmeriChip International
L  24700 Capital Avenue                 I  24700 Capital Avenue
D  CLINTON TWP, MI 48036                P  CLINTON TWP, MI 48036
   United States of America             T  United States of America
T                                       O
O
```

| Buyer | Ship Via | FOB | Shipment Date |
|---|---|---|---|
|  | BW |  |  |

| Sales Person | Parts Coordinator | Due Date | Payment Terms |
|---|---|---|---|
|  |  | 08-23-07 | NET 30 |

| Ln No | Part Number | Quantity Ordered | Quantity Shipped | Unit Price | Extended Price |
|---|---|---|---|---|---|
|  | NOV 06 - JULY 07 RENTAL | | | | |
| 1 | 01 2700 TOYODA MACHINE MODEL:FH630S SERIAL NUMBER: NS0984 $12,525.00 PER MONTH | 8.00 | 8.00 | 12525.00 | 100200.00 |
| 2 | 01 2700 FREIGHT CHARGES | 1.00 | 1.00 | 4000.00 | 4000.00 |
| 3 | 01 2700 SERVICE | 1.00 | 1.00 | 5000.00 | 5000.00 |
|  | Sales Taxes  Michigan - Non-Taxable | | | | 0.00 |

Due $109,200.00

Remit Payment To:   P.O. Box 74053   ● Chicago, IL  60690   For your convenience we accept Visa/MC/AMEX

**EXHIBIT "B"**

## SECURITY AGREEMENT

2635 - 3374A

| "A" DEBTOR<br>AMERICHIP INTERNATIONAL HOLDINGS, LLC | | "B" SECURED PARTY<br>TOYODA MACHINERY USA CORPORATION |
|---|---|---|
| Address<br>9282 General Drive | | Address<br>316 West University Drive |
| City/State/Zip<br>Plymouth, Michigan 48170 | | City/State/Zip<br>Arlington Heights, Illinois 60004 |
| Entity Type<br>LLC | State of Organization<br>Michigan | Location of Collateral<br>9282 General Drive<br>Plymouth, Michigan 48170 |
| SSN/FEIN # | State of Organization ID #<br>B7367T | |

**"C" COLLATERAL DESCRIPTION**

One (1) Toyoda Horizontal Machining Center, Model FH630S, Serial No. NS-0984

DEBTOR and SECURED PARTY hereby agree to the terms and conditions hereinafter set forth in this Security Agreement.

**DEBTOR:**
AMERICHIP INTERNATIONAL HOLDINGS, LLC
By: _[signature]_
Title: Pres./CEO
Date: 10/16/06

**SECURED PARTY**
TOYODA MACHINERY USA CORPORATION
By: _[signature]_
Title: Corporate Controller

### 1. DEFINITIONS.

(a) "DEBTOR" as used herein shall mean the DEBTOR named in Box "A" above.

(b) "Collateral" as used herein shall mean all property and rights described above in Box "C" above, and any and all auxiliary equipment and accessories therefor together with all spare parts, attachments, accessories, accessions, additions, replacements, improvements, modifications and substitutions thereto or thereof, whether heretofore or hereafter acquired by DEBTOR, together with all proceeds (as presently or hereafter defined by the Uniform Commercial Code) thereof, including, but not limited to, cash, money, promissory notes, inventory, accounts, accounts receivable, documents, instruments, chattel paper, general intangibles, payment intangibles, contract rights, leases, lease proceeds, rental payments, license fees, trade-ins, equipment, fixtures, accessories, attachments, work in process, goods, goods in transit, returned goods, and the proceeds and products of the foregoing, all as presently or hereafter defined by the Uniform Commercial Code.

(c) "SECURED PARTY" as used herein shall mean the SECURED PARTY named in Box "B" above.

### 2. GENERAL UNDERSTANDINGS.

(a) SECURED PARTY (i) has in the past extended credit to DEBTOR or sold/leased goods to DEBTOR, or (ii) in the future may, at its sole discretion, extend credit to DEBTOR or sell goods to DEBTOR. All loan and sales documents relating thereto, including, but not limited to, loan agreements, sales agreements, purchase orders, confirmations of sale, or any other documents of agreement, if any, (collectively the "Documents") shall be subject to the terms of this Agreement. To the extent that any provisions of the Documents or any other agreements or documents/forms conflict with any provisions of this Agreement, the provisions of this Agreement shall prevail. DEBTOR states that it has entered into this Agreement in order to induce SECURED PARTY either to extend credit, to continue to extend credit or to sell goods to DEBTOR, at SECURED PARTY's sole discretion.

(b) DEBTOR warrants, represents and covenants that (i) DEBTOR is an individual, organization, or registered organization as indicated in Box marked "Entity Type" above; (ii) if DEBTOR is a registered organization, DEBTOR's state of organization is the state set forth in Box marked "State of Organization" above; (iii) DEBTOR's place of business (or chief executive office, if DEBTOR has more than one place of business) is set forth in Box "A"; (iv) if DEBTOR is an individual, DEBTOR's principal residential address is set forth in Box "A"; and (v) DEBTOR shall not change its form of business or organization, change or in any way amend or alter its legal name or change its residential address, place of business or chief executive office without providing SECURED PARTY at least thirty (30) days prior written notice thereof.

3. **GRANT OF RIGHTS AND SECURITY INTEREST.** In order to secure the payment and performance of any and all obligations owing by DEBTOR to SECURED PARTY, now existing or hereafter arising (including any future advances or indebtedness, interest, attorneys' fees and other costs and expenses), DEBTOR hereby grants to SECURED PARTY, and SECURED PARTY hereby takes and retains, a continuing general security interest in all of the Collateral. To the extent that SECURED PARTY has extended credit to DEBTOR to acquire the Collateral (or any portion thereof) or sold and/or delivered the Collateral (or any portion thereof) to DEBTOR, DEBTOR grants and SECURED PARTY takes and retains a purchase money security interest in the Collateral. DEBTOR hereby appoints SECURED PARTY as its attorney in fact, and authorizes SECURED PARTY to, (i) sign/authenticate on behalf of DEBTOR such additional documents/records as may be required from time to time to create, amend, extend, continue, maintain or perfect the security interest described herein or otherwise granted to or retained by Secured Party and (ii) to make/undertake any filings or registrations with governmental officials or offices and take such other actions as SECURED PARTY deems appropriate to perfect, amend, continue and maintain the perfection of the security interest created hereby or otherwise granted to or retained by Secured Party. In addition, DEBTOR hereby ratifies any filings made against DEBTOR by SECURED PARTIES prior to the date hereof. The aforesaid security interests shall secure and act as security for any and all indebtedness, liability and obligations of DEBTOR to SECURED PARTY, whether absolute, contingent, direct, indirect, liquidated or unliquidated, now existing or hereafter arising, whether or not secured by property or rights in addition to the Collateral.

4. **COVENANTS WITH RESPECT TO COLLATERAL.**
(a) DEBTOR shall have the right to possession and control of the Collateral, and if the Collateral is inventory of DEBTOR, the right to sell and use the same in the ordinary course of business, until an act of default occurs under the Documents or this Agreement, at which time SECURED PARTY shall be entitled to possession and control of the Collateral. DEBTOR shall maintain accurate records of the Collateral and, upon request by SECURED PARTY, furnish copies thereof to SECURED PARTY. SECURED PARTY may, from time to time, examine the books and records of DEBTOR with respect to the Collateral and any sales made thereof, and may, from time to time, examine the Collateral during business hours.
(b) DEBTOR shall keep the Collateral free of all liens and encumbrances at all times, and pay, or cause to be paid, all rent due on the premises where the Collateral is or may be located. DEBTOR shall keep the Collateral on the premises indicated in the Box marked "Location of Collateral" above, unless SECURED PARTY consents in writing in advance to its removal to another location. DEBTOR shall protect and insure the Collateral at all times against all risks to which it is exposed with policies satisfactory to SECURED PARTY. Such policies shall provide for any losses to be payable to both SECURED PARTY and DEBTOR as their interests appear. DEBTOR hereby assumes all risks of loss from casualty or other losses.
(c) DEBTOR shall pay promptly when due all taxes and assessments upon the Collateral.
(d) The Collateral shall at all times be and remain personal property and shall not be affixed or attached to any real property in such a manner so as to become, or be deemed to be, a fixture. Any fixture filings undertaken by SECURED PARTY shall be precautionary and shall not be deemed to constitute an admission that the Collateral has become a fixture.

5. **DEFAULT.** DEBTOR shall be in default hereunder in the event that (a) DEBTOR shall fail to pay any indebtedness when due or payable or fail to perform any duty or obligation required to be performed by DEBTOR hereunder or under the terms of the Documents or any other agreement between DEBTOR and SECURED PARTY; (b) DEBTOR shall fail to pay its obligations as they become due or payable; (c) a judgment is entered against DEBTOR and not vacated or fully satisfied within thirty days after the date of entry; (d) the business of DEBTOR is in any way liquidated, or if DEBTOR makes any assignment for the benefit of creditors or a petition under any chapter of any bankruptcy law is filed by or against DEBTOR; (e) SECURED PARTY deems itself insecure, or if, in the opinion of SECURED PARTY, any part of the Collateral is in danger of loss, misuse, seizure or confiscation; or (f) DEBTOR sells, alienates or assigns a substantial portion of its assets in a transaction other than in the ordinary course of its business. DEBTOR's default shall not be affected or obviated in any manner by reason of any defense of setoff, abatement or recoupment, or any claim or counterclaim asserted by DEBTOR, including, but not limited to, any claim for breach of warranty or contract.

6. **REMEDIES UPON DEFAULT.** In the event of a default by DEBTOR, in addition to all other rights and remedies provided herein and/or by applicable law, SECURED PARTY shall, if it so elects, have the following remedies, without prior notice to DEBTOR:
(a) The unpaid balance of any and all indebtedness, obligations and liabilities however evidenced and secured shall be accelerated and become immediately due and payable;
(b) SECURED PARTY shall have all the rights and remedies of a secured party under the Uniform Commercial Code in effect in the State of Illinois and the state in which DEBTOR is located and/or the Collateral is located. Specifically, and not in limitation hereof, SECURED PARTY shall have the right to immediate possession of the Collateral upon demand. SECURED PARTY's right to possession shall not be affected or obviated in any manner by reason of any claims asserted by DEBTOR of any nature whatsoever, including specifically, but not limited, to any defense of setoff, abatement, recoupment or any claim or counterclaim, including, but not limited to, any claim of breach of warranty or contract. In furtherance thereof, SECURED PARTY may enter upon DEBTOR's premises and remove the Collateral and/or disable or render the Collateral unusable, whether electronically or by any other means available to SECURED PARTY. Further, SECURED PARTY may require DEBTOR to assemble the Collateral and make it available for removal by SECURED PARTY at a place designated by SECURED PARTY.
(c) Upon demand by SECURED PARTY, DEBTOR shall immediately cease all use of the Collateral (and if the Collateral is inventory, refrain from any further or continuing sales thereof) and take such further actions as may be necessary to protect and save the Collateral from any further depreciation or decline in value. DEBTOR shall hold the Collateral for disposition in accordance with SECURED PARTY's instructions.

7. **TERM AND TERMINATION.** This Agreement shall take effect upon signature/authentication and shall remain in full force and effect for so long as SECURED PARTY shall sell goods to DEBTOR and/or for so long as DEBTOR remains in any way indebted or obligated to SECURED PARTY. This Agreement may be terminated only by written agreement signed/authenticated by SECURED PARTY. Any filing(s) undertaken by SECURED PARTY relative hereto may only be terminated/released by the filing by SECURED PARTY of a termination/release statement with the Secretary of State (or other appropriate filing office) of the state(s) where SECURED PARTY has previously filed any such financing statements.

8. **MISCELLANEOUS.**
(a) The signatures subscribed on the front page of this Agreement shall constitute and be deemed the lawful acceptance and authentication of this Agreement by the parties hereto. This Agreement may be authenticated in any manner provided by applicable law.
(b) The provisions of this Agreement shall be deemed to be several, and any invalidity of any provision shall not affect the validity of the remaining provisions hereof. Any invalidity of any security interest attempted to

be created hereby in any item or part of the Collateral shall not affect the validity of the security interest created in the remaining items or parts of the Collateral.

(c) To the extent that any security interest granted hereby is valid as a purchase money security interest, the same shall take effect according to the terms of this Agreement as a purchase money security interest. To the extent that any obligation secured hereby cannot validly be secured by a purchase money security interest, it shall nevertheless be secured by the security interest provided herein as a non-purchase money security interest.

(d) In the event that the Collateral or any part thereof shall bear DEBTOR's private brand, trademark, or labels or the brands, trademarks, or labels of others who have licensed DEBTOR to use their brands, trademarks, or labels, SECURED PARTY shall have the right, as agent of DEBTOR, to sell or otherwise dispose of the Collateral with said brands, trademarks, or labels.

(e) SECURED PARTY may remedy any default hereunder, and/or may waive any default hereunder, without waiving the default remedied and without waiving any other prior or subsequent default.

(f) Upon the occurrence of any default hereunder, or under any Documents or other indebtedness or obligation of DEBTOR to SECURED PARTY, SECURED PARTY shall be entitled to recover from DEBTOR all costs and expenses incurred, or to be incurred, by reason of such default, including, but not limited to, reasonable attorneys' fees, paralegal and experts' fees, court costs, witness fees, expenses of litigation, and any and all other expenses of repossessing, safeguarding and selling the Collateral, whether or not litigation is commenced.

(g) EXCEPT TO THE EXTENT OTHERWISE MANDATED BY APPLICABLE LAW, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS, WITHOUT REFERENCE TO CONFLICTS OF LAWS PRINCIPLES.

(h) WITHOUT LIMITING SECURED PARTY'S RIGHT TO COMMENCE ANY ACTION, AT SECURED PARTY'S ELECTION, IN ANY OTHER JURISDICTION, DEBTOR HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT (FEDERAL OR STATE) SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS AND WAIVES ANY OBJECTION TO LACK OF JURISDICTION, IMPROPER VENUE AND/OR FORUM NON-CONVENIENS AND FURTHER CONSENTS TO SERVICE OF PROCESS BY CERTIFIED MAIL, POSTAGE PRE-PAID, ADDRESSED TO DEBTOR AT ITS ADDRESS SET FORTH HEREIN. DEBTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY. DEBTOR SHALL BRING ANY LEGAL PROCEEDINGS ARISING OUT OF THIS AGREEMENT, THE DOCUMENTS AND/OR THE RELATIONSHIP OF THE PARTIES HERETO ONLY IN A FEDERAL OR STATE COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS. IN THE EVENT THAT DEBTOR INSTITUTES ANY ACTION IN ANY OTHER COURT OR FORUM, DEBTOR SHALL PAY SECURED PARTY'S EXPENSES IN DISMISSING OR TRANSFERRING SUCH ACTION TO A COURT LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS.

(i) In the event that DEBTOR shall contest SECURED PARTY's right to possession in any action relating to the Collateral, DEBTOR shall post a bond in the amount of two times the sales price or value (whichever is greater) of the Collateral to protect SECURED PARTY's interest therein. SECURED PARTY shall not be required to post any bond or other forms of security in connection with any action for the repossession or replevin of, or otherwise relating to, the Collateral.

(j) From and after a default in the payment of any amounts due and owing to SECURED PARTY, the principal balance due and outstanding shall bear interest at (1) the rate of interest set forth in the Agreement relating to the sale of the Collateral to DEBTOR or (2) 18% per annum, whichever is higher; provided however, in no event shall said rate of interest exceed the maximum rate of interest permissible under applicable law.

(k) DEBTOR waives any and all claims for punitive damages relating to the Collateral, the Documents, this Agreement, the relationship of the parties and any other matters related thereto.

(l) This Agreement, and all obligations and rights hereunder, shall not be assignable by DEBTOR without the express written consent of SECURED PARTY. This Agreement shall be binding upon DEBTOR's successors and permitted assigns.